The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner Jr., and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the Opinion and Award.
* * * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. The Amerisure Insurance Company was the compensation carrier on the risk.
4. Plaintiff is alleging an injury by accident which allegedly occurred on 15 September 1993, resulting in an injury to his back.
5. Defendant-employer has denied liability.
6. Plaintiff is seeking temporary total disability benefits from 14 September 1993 through 24 September 1994, plus medical expenses.
7. The issues to be determined by the Commission are:
 1) What is plaintiff's correct average weekly wage, and
 2) Did plaintiff in fact suffer an injury by accident or a specific traumatic incident.
* * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the deputy commissioner as follows:
FINDINGS OF FACT
1. On or about 14 September 1993, plaintiff was working as carpenter for Cain Builders, a construction company owned and by one Henry Lee Cain, Sr. At that time plaintiff's regular hourly wage was $8.00 per hour.
2. Plaintiff was working with Mr. Cain and a third person on the roof of a two-story house and was attempting to install a wall by sliding it down into the chimney chase and fastening it onto the second story of the house.
3. Plaintiff was holding the wall in an attempt to place the wall into position when he felt something "pop" in his back, however, he continued to work. Thereafter, the same day, plaintiff stepped on a nail and was unable to continue to work that day.
4. The next day plaintiff's foot and back were bothering him and he was unable to work, however, his foot was more painful at that time than his back.
5. Plaintiff's back pain continued to increase and on 13 October 1993 he presented himself at the emergency room at Moses Cone Hospital where he saw Dr. McAlvany in the Moses Cone Emergency Room. Dr. McAlvany in his emergency record chart states "hurt back 9/21 at work, has gradually gotten worse; has pain radiating down right leg-happened while lifting wall."
6. Dr. McAlvany advised plaintiff that he needed additional medical attention and plaintiff thereafter went to the Grossman Chiropractic Clinic where he saw Dr. Larry W. Grossman, who recommended that plaintiff have an MRI of his lumbar spine, which showed plaintiff to have a herniated disc. (L5-S1)
7. Thereafter, Dr. Grossman referred plaintiff to a neurosurgeon, Dr. R.D. Holmberg. Dr. Holmberg performed a lumbar laminechtomy and has treated plaintiff since his original visit on 19 October 1993.
8. Plaintiff's statements as to how his back was injured are believable and corroborated by the histories given to Dr. McAlvany, Dr. Grossman, and Dr. Holmberg. In Dr. Holmberg's letter of 27 September 1994, and in his deposition, Dr. Holmberg stated: "From the history of the injury that he suffered at work, which involved standing on a roof and pushing a large wall forward down the slope, which involved going from a hyperextension to an extension motion, he suddenly had an onset of low back pain and right leg pain. Approximately five minutes later, he stepped on a nail. The next day, his back and foot hurt so bad he couldn't get out of the car. But over the next three days or so, which is the natural evolution for the history of a ruptured disc, his foot began to improve from where he stepped on the nail and his back became worse as well as his leg pain. So, I think that thus absolutely fits the history of an acute ruptured disc."
9. Dr. Holmberg further stated in his deposition: "the thing with a ruptured disk is it's not just mechanical pain, so that often times you'll feel something pop. They might feel some tingling in their foot or something and a mild discomfort. And then over the next week to several weeks, they get a progressive inflammatory response, and it's identical to the response you get from an organ rejection. In other words, say I transplant an organ into you and I don't suppress your immune system, it'll take some time for your body to reject it because you have to mount a response tot his substance. In this case it's disk material, but your body does not see that disk material as self. It sees it as something foreign as it would see and organ, so there's a specific immunological responses in disk disease. And this is why they get worse and worse and worse. Thus is why they respond so nicely to steroids which repress the immune system. So that what happened with him was that he popped a disk out, and then he developed an intense inflammatory reponses to it over time. So that they can be acutely incapacitated with the disk, but the usual is it takes some time for it to really kick in."
10. As a result of plaintiff's injury by accident, he was temporarily totally disabled from 14 September 1993 through 24 September 1994. Plaintiff reached maximum medical improvement and suffers from a fifteen (15%) percent permanent partial impairment to the back.
11. Plaintiff had an extremely poor work record for the three years preceding his injury. During those years plaintiff had no disabilities and yet the most he earned in any of those three years was $3,376.24 (1992). In the 36 weeks prior to 15 September 1993 plaintiff earned $2,686.20.
12. Plaintiff quit his job at Cain Builders on 16 September 1993 and asked to be paid for the days that he worked. There is no evidence that he wanted to continue working there and, in fact, he testified that he couldn't "hang with the boys".
13. Based on the foregoing, plaintiff's average weekly wages are computed by considering plaintiff's earnings for 1992 and 1993 in that these years most accurately reflect plaintiff's actual earnings. His average weekly wage in 1991 was $63.80; in 1992 $64.90, and in 1993 $75.70. Therefore, plaintiff's average weekly wage is $75.70, which yields a compensation rate of $50.47.
* * * * * * * * * * * *
Based on the foregoing the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The history given by plaintiff and the injuries received are credible and consistent with the medical findings in this case. Furthermore, plaintiff's back injury is compensable pursuant to G.S. § 97-2 (6) and is a "specific traumatic incident" as defined in Richard's v. Town of Valdese, 92 N.C. App. 222,374 S.E.2d 116 (1988), cert. denied, 324 N.C. 337, 378 S.E.2d 799
(1989), which stated that back injuries that occur gradually, over long periods of time, are not specific traumatic incidents; however, events which occur contemporaneously, during a cognizable time period, and which causes back injury, do fit the definitions intended by the legislature.
2. G.S. § 97-2 (5) sets fourth methods by which average weekly wage may be calculated. The appropriate method in this case is the one that applies in situations when, for exceptional reasons, the first three would be unfair, either to the employer or the employee. This method most nearly approximates the earnings of plaintiff over the years. Therefore, plaintiff's average weekly wage is $75.70, which yields a compensation rate of $50.47.
3. Plaintiff was temporarily totally disabled form 14 September 1993 through 24 September 1994, and is entitled to benefits at the rate of $50.47 per week. G.S. § 97-29.
4. Plaintiff suffers a fifteen (15%) percent permanent partial impairment to the back and is entitled to benefits at the rate of $50.47 per week for 45 weeks. G.S. § 97-31.
5. Plaintiff is entitled to medical expenses resulting from this injury by accident. G.S. § 97-25.
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, The Full Commission affirms the holding of the deputy commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total benefits to plaintiff at the rate of $50.47 per week from 14 September 1993 through 24 September 1994. This compensation has accrued and shall be paid to plaintiff in a lump-sum, subject to the attorney's fee hereinafter approved.
2. Defendants shall pay compensation to plaintiff at the rate of $50.47 for 45 weeks for the 15 percent permanent partial impairment he sustained to his back. This compensation has accrued and shall be paid to plaintiff in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury by accident.
4. An attorney's fee in the amount of 25 percent of the Award is hereby approved for plaintiff's counsel. Said amount shall be deducted from the aforesaid Award and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due this Commission for the initial hearing before the Deputy Commissioner and each side shall bear its own costs for the hearing before the Full Commission.
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER
DISSENTING:
S/ ________________ COY M. VANCE COMMISSIONER